# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                  CR 03-744 BB

KENNETH BOCK,
CHRISTOPHER LEE THOMPSON and
MICHAEL ANTHONY TORRES,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for a bench trial September 21, 2003. The three Defendants face Class A misdemeanor charges alleging the taking of an endangered species – the New Mexico ridgenosed rattlesnake – in violation of 16 U.S.C. § 1538(a)(1)(B) & (D) and 18 U.S.C. § 2. The Defendants knowingly and voluntarily waived their right to a trial by jury and consented to having me serve as the presiding judge. Having taken testimony and received evidence, and having heard the arguments of counsel,[1] I hereby set forth my findings and conclusions pursuant to Rule 23(c) of the Federal Rules of Criminal Procedure.

### Findings of Fact

(1)  On May 16, 1998, Defendants Kenneth Bock, Christopher Lee Thompson and Michael Anthony Torres were engaged in a joint venture to capture reptiles for sale to pet stores. They

---

[1] I faxed counsel asking that they talk and indicate if they wanted more argument, and if so whether by oral or written means with a proposed schedule for briefs or date for hearing. The parties have indicated to my staff that no additional argument is requested.

had been engaged in such ventures in the past and were knowledgeable and experienced in the collection of reptiles using specially tailored equipment resembling fishing poles with loops on the end.

(2) On that day, the defendants were collecting reptiles in the boot heel region of New Mexico in Hildalgo County in an area known as Geronimo Trail located in the Peloncillo Mountains within the Coronado National Forest.

(3) Although the Chiricawa Mountains have a much more abundant supply of reptile populations, the Peloncillo Mountains contain two unique subspecies of rattlesnakes – the New Mexico Ridgenosed rattlesnake and the Tiger rattlesnake.

(4) The New Mexico ridgenosed rattlesnake can be found only in three mountain ranges: the privately-owned Animas mountains in New Mexico, the national forest lands of the Peloncillo mountains in Arizona and New Mexico; and the Sierra San Luis mountains of Mexico.

(5) There exist fewer than 500 New Mexico ridgenosed snakes in the Peloncillo mountains such that it takes on average 264 man hours of searching to locate a single specimen in that area.

(6) On that day, the defendants captured numerous species that are not protected under the Endangered Species Act ("ESA") such as canyon tree frogs, Sonoran mud turtles, Clark's spiny lizards and southern prairie lizards.

(7) Additionally, Defendant Michael Torres actually found and purposefully captured the young adult female New Mexico ridgenosed rattlesnake at issue. There is no evidence that the other defendants assisted in the capture.

(8)  On May 16, 1998, United States Fish and Wildlife officers were involved in an undercover investigation with Arizona and New Mexico state game agents at Geronimo Trail because of reports of unauthorized takings of the New Mexico ridgenosed rattlesnake in that area.

(9)  When the United States Fish and Wildlife Officers Scott Heard and Kate Looney arrived at the defendants' van to confront them, all three defendants were present at the scene.  The van's sliding doors were open, and small white containers used for the collection of toads and lizards were observed inside.  A larger white bucket was on the ground near the van's opened doors.

(10)  The officers had been told by Defendant Bock earlier in the day that the defendants had no permits or licenses for collection of the specimens because Bock had been informed that none were required.  However, New Mexico law does require such permits and the officers determined that they had probable cause to search the van and seize any collected reptiles.

(11)  During the search, Officer Heard detected a rattling noise and he asked the defendants, "Okay, guys.  Where is it at?"   Both agents testified at trial that Defendant Bock replied something to the effect that it was in the bucket between Officer Heard's legs.  The officers' report, however, did not identify which defendant made that response.

(12)  A ridgenosed rattlesnake and a rock rattlesnake have a similar appearance.  Even Officer Heard initially thought that the collected snake was a rock rattlesnake until Officer Schultz pointed out that the specimen was "an *obscuris*."

(13)  Beyond a reasonable doubt, I find that Defendant Torres knew he had captured a snake and that it was specifically a rattlesnake due to its distinctive tail.  The government has not proven that Defendant Torres knew either that the snake was of the New Mexico ridgenosed rattlesnake subspecies or that it was protected under the ESA.

(14)  Given all of this evidence and the reasonable inferences that flow, the government has proven beyond a reasonable doubt that Defendants Bock and Thompson knew that the animal captured by Defendant Torres was a rattlesnake.

(15)  Defendants had no scientific or educational collecting permit that would have authorized them to collect a New Mexico ridgenosed rattlesnake.  The rattlesnake at issue was taken without permission of the Department of the Interior.

(16)  Defendants voluntarily abandoned to the government all of the specimens they had collected that day.

(17)  The female of the species gives live birth to an average of five babies every other year. The captured specimen at issue would likely have produced 25-30 offspring if she had been immediately returned to the wild.  Instead, the government determined to keep her in captivity as evidence for the trial against the defendants.  It would be unwise to return the rattlesnake to the wild at this time because she has likely lost the necessary instincts/skills to survive.

## Conclusions of Law

(1)   Defendants Bock, Thompson and Torres were acting in concert to collect reptiles on May 16, 1998 in the District of New Mexico.

(2)  The New Mexico ridgenosed rattlesnake *(Crotalus willardi obscurus)* is listed as endangered pursuant to the ESA and is therefore subject to the Act's protection.  *See* 50 C.F.R. § 17.11 (listing endangered and threatened wildlife and plants)

(3)   Under the ESA, "take" is defined to mean "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct."  16 U.S.C. § 1532(19).

(4)  Defendant Torres knowingly and voluntarily took the rattlesnake, later determined to be a New Mexico ridgenosed rattlesnake.

(5)  The Department of Interior had not granted permission to any of the defendants to take the protected rattlesnake.

(6)  As to the required scienter for conviction for the principal who takes a protected species:[2]

All of the case law indicates, and Defendant concede, that in order to be guilty, a defendant need not know that the animal taken was on the endangered species list and thereby protected by the Act.  Nonetheless, the government acknowledges that this is not a strict liability crime and that federal law imposes _some_ required level of knowledge regarding the animal that is taken.  The Government and defendants do not agree on that necessary level of knowledge for conviction, however.

It appears that for some courts, the requisite scienter for conviction is akin to knowledge that the specimen taken qualifies as "animal" or "vegetable" or "mineral."  For instance, in *United States v. McKittrick*, 142 F.3d 1170, 1177 (9th Cir. 1998), the defendant thought he had shot a

---

[2]   A specific intent crime is one in which an act was committed voluntarily and purposely with the specific intent to do something the law forbids.   In contrast, a general intent crime is one in which an act was done voluntarily and intentionally, and not because of mistake or accident.   In short, a specific intent crime is one in which the defendant acts not only with knowledge of what he is doing, but does so with the objective of completing some unlawful act.

*United States v. Blair*, 54 F.3d 639, 642 (10th Cir.) (quotation marks, citations and parenthetical information omitted), *cert. denied*, 516 U.S. 883 (1995).

dog but had actually killed a protected gray wolf.  The Ninth Circuit upheld the conviction noting that

> [i]n 1978, Congress changed the wording of section 11 to "reduce[] the standard for criminal violations from 'willfully' to 'knowingly.'" H.R.Rep. No. 95- 1625, at 26 (1978), reprinted in 1978 U.S.C.C.A.N. 9453, 9476.  It did this to "make[ ] criminal violations of the act a general rather than a specific intent crime." *Id.* As the magistrate judge recognized, the District of Montana had already decided the intent issue in the government's favor, holding on similar facts that "[t]he critical issue is whether the act was done knowingly, not whether the defendant recognized what he was shooting." *United States v. St. Onge*, 676 F. Supp. 1044, 1045 (D. Mont.1988) [no defense that defendant thought that he was shooting an elk rather than a grizzly bear](further citations omitted) . . . . ***Section 11 requires only that McKittrick knew he was shooting an animal*, and that the animal turned out to be a protected gray wolf.**

*McKittrick*, 142 F.3d at 1177 (emphasis added).

Some courts seem to require more specific knowledge of the taxonomy of the specimen.  In *United States v. Billie*, 667 F. Supp. 1485 (S.D. Fla.1987), the court held that the government did not have to prove that the defendant knew that the animal he shot was a endangered Florida panther as opposed to a non-endangered species of panther.  Rather, "the Government need prove only that the defendant acted with general intent when he shot the animal in question." *Id.* at 1492-93.  As the *St. Onge* court observed,

> The [*Billie*] court's rationale was that the Endangered Species Act is a regulatory statute, enacted to conserve and protect endangered species, and that its purposes would be eviscerated if the government had to prove that the hunter recognized the particular ***subspecies*** protected under the Act.  *Id.* at 1492-93.

*St. Onge*, 676 F. Supp. at 1492-93.  If I am reading the *Billie* and the *St. Onge* opinions correctly, a defendant can be convicted if he knows less about the specimen than its subspecies, such as the more inclusive "species" or "genus" classifications of the animal. [3]

The government asserts that under the circumstances of this case, knowledge that the animal was a "rattlesnake" will suffice for a conviction.[4]  A decision that seems to support the government's position is *United States v. Nguyen*, 916 F.2d 1016, 1017-18 (5th Cir.1990) which involved the taking of an endangered sea turtle.  There the Fifth Circuit explained,

---

[3]  "A species is defined as the natural grouping of animals of a common ancestry, a reasonably close physical resemblance, and which in nature interbreed and produce fertile offspring."  *http://www.americazoo.com/goto/index/reptiles/classification*   A "genus" is a taxonomic category ranking below a family and above a species and generally consisting of a group of species exhibiting similar characteristics. In taxonomic nomenclature the genus name is used, either alone or followed by a Latin adjective or epithet, to form the name of a species.  *Id.*

I recognize that the factual information and definitions of taxonomic classifications were not presented as evidence in the trial.  My resort to treatises and online information sites has been used only for the purpose of gaining information to better understand the rulings of other courts in the context in which they were decided.  Only then did I feel that I could fairly extrapolate their reasoning to the facts of this case.

[4]  The Court takes judicial notice that all rattlesnakes are within the "Crotalus" genus. The taxonomy classifications for various rattlesnakes, for instance, are as follows:

|  | Diamondbacks | | Ridgenosed | |
|---|---|---|---|---|
|  | *Eastern* | *Western* | *Arizona* | *New Mexico* |
| Phylum: | Chordata | Same | Same | Same |
| Subphylum: | Vertebrata | Same | Same | Same |
| Class: | Reptilia | Same | Same | Same |
| Subclass: | Lepidosauria | Same | Same | Same |
| Order: | Squamata | Same | Same | Same |
| SubOrder: | Serpentes | Same | Same | Same |
| Family: | Viperidae | Same | Same | Same |
| Genus: | Crotalus | Same | Same | Same |
| Species: | adamanteus | atrox | willardi | willardi |
| Subspecies |  |  | willardi | obscurus |

*http://www.venomousreptiles.org/pages/rattlesnake*

> The legislative history of that section shows that Congress intended to make violations of its provisions a general intent crime. Thus, it is sufficient that Nguyen knew that he was in possession of a ***turtle***. The government was not required to prove that Nguyen knew that this turtle is a threatened species or that it is illegal to transport or import it.

*Nguyen*, 916 F.2d at 1018 (emphasis added). However, since there are eight recognized living species of sea turtles grouped into seven genera, the *Nguyen* court may have been requiring only knowledge of the more general "family" or the even more inclusive "suborder" category for the animal.[5]

Tenth Circuit case law provides me with little guidance as to the requisite *mens rea* for a misdemeanor violation the ESA. Defendants urge that in order to be convicted, they must have known that the animal collected here was a New Mexico ridgenosed rattlesnake, or at the very least a rattlesnake of the ridgenosed genus *(i.e. willardi)*. For this proposition, Defendants rely on *Staples v. United States*, 511 U.S. 600 (1994).

In *Staples*, the defendant was convicted of possession of a machine gun in violation of 26 U.S.C. § 5861(d). The Supreme Court reversed the conviction finding that the defendant was required to have known that the weapon he possessed had characteristics that brought it within statutory definition of machine gun. The court noted that "[s]uch a gun may give no externally visible indication that it is fully automatic" and that under the Government's view, even someone "who simply has inherited a gun from a relative and left it untouched in an attic or basement, can

---

[5] The suborder "Cryptodira" includes freshwater turtles, snapping turtles, tortoises, soft-shelled turtles, and sea turtles. The sea turtles fall into one of two families – "Cheloniidae" or "Dermochelyidae." *See http://www.cccturtle.org/species_class.htm*

be subject to imprisonment, despite absolute ignorance of the gun's firing capabilities. . . ." *Id.* at 1802.

The *Staples* court stressed that

> [t]he potentially harsh penalty attached to violation of § 5861(d) – up to 10 years' imprisonment – confirms our reading of the Act. Historically, the penalty imposed under a statute has been a significant consideration in determining whether the statute should be construed as dispensing with *mens rea*. Certainly, the cases that first defined the concept of the public welfare offense almost uniformly involved statutes that provided for only light penalties such as fines or short jail sentences, not imprisonment in the state penitentiary.

*Id.* at 1802-03 (citations omitted). Indeed, "absent a clear statement from Congress that *mens rea* is not required, we should not apply the public welfare offense rationale to interpret any statute defining a ***felony*** offense as dispensing with *mens rea*." *Id.* at 1803 (emphasis added). A felony is defined as any crime punishable by more than one year in prison. *See* 18 U.S.C. § 3559. The Supreme Court felt that

> where, as here, dispensing with *mens rea* would require the defendant to have knowledge only of traditionally lawful conduct, a severe penalty is a further factor tending to suggest that Congress did not intend to eliminate a *mens rea* requirement. In such a case, the usual presumption that a defendant must know the facts that make his conduct illegal should apply.

*Id.* at 1804.

Similarly, in *United States v. Lynch*, 233 F.3d 1139 (9th Cir.2000), a deer hunter saw and unearthed a human skull that ended up being 1400 years old. The Ninth Circuit held that for a conviction under the Archaeological Resources Protection Act ("ARPA"), 16 U.S.C. § 470ee(a), the Government was required to prove that the defendant knew or had reason to know that he

was removing an "archeological resource."  The *Lynch* opinion expressly echoed that "the *Staples* concern regarding strict penalties to unwitting violators counsels against convicting an unwitting person of a felony when nobody knew until after a lengthy investigation that the object taken was more than 100 years old, and that the costs associated with restoration of the site would [subject the defendant to a term of incarceration of up to two years and a fine of $20,000.]"  *Id.* at 1143.

The *Lynch* court further distinguished its holding in the *McKittrick* case for several reasons: legislative history of the ARPA suggested that Congress wanted to avoid "penalizing archeologically naive visitors to public lands" and violation of the ESA was a misdemeanor whereas the defendant in *Lynch* faced potential felony penalties.  Moreover, as the *Lynch* court observed, "The plain intent of Congress in enacting [the Endangered Species Act] was to halt and reverse the trend toward species extinction, ***whatever the cost***.  This is reflected not only in the stated policies of the Act, but in literally every section of the statute."  *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 184 (1978) (emphasis added).  Here, the defendants face only misdemeanor penalties if found guilty.  To require a showing of knowledge of the subspecies of the taken animal would be at odds with the purposes of the ESA.

The only Tenth Circuit case providing any potential guidance is *United States v. Quarrell*, 310 F.3d 664, 682 (10th Cir.2002).  There, the defendants relied on *Staples* and *Lynch* to argue that under the ARPA, the government must prove that they knew they were excavating on federal property.  The Tenth Circuit disagreed with using the *Lynch* and *Staples* rationale where the defendants are knowingly engaging in excavations designed to collect archeological resources.

> Unlike a citizen owning a firearm unaware of its automatic firing
> capabilities, or a distributor of sexually-explicit materials unaware
> of the age of its performers, a person excavating on someone else's

>land, whether public or private, cannot reasonably expect to be free
>from regulation.  In *Staples*, the Court opined that because of the
>long tradition of lawful gun ownership, gun owners are not
>sufficiently on notice of the likelihood of regulation to warrant
>dispensing with the scienter requirement.  511 U.S. at 611-12, 114
>S. Ct. 1793.  Excavating for archaeological resources has not
>enjoyed a similar tradition.  Since the Antiquities Act of 1906, 16
>U.S.C. § 431-33, it has been a crime to excavate for historic ruins
>on government land without express permission from the
>government.  Moreover, "there is no right to go upon another
>person's land, without his permission, to look for valuable objects
>buried in the land and take them if you find them."  *United States v.
>Gerber*, 999 F.2d 1112, 1115-16 (7th Cir.1993).  One would
>anticipate that excavating for archaeological resources on another
>person's land, whether private or public, would not be viewed as an
>innocent act. . . .  The Quarrells, unlike the casual visitor [in
>*Lynch*], knew they were excavating and knew they were removing
>valuable archaeological resources from the land.  This is precisely
>the activity Congress intended to prevent and punish when it
>enacted ARPA.

*Quarrell*, 310 F.3d at 672.

Defendants contend that the *Quarrell* holding is inapplicable because the collection of archeological artifacts would be illegal whether undertaken on private or public lands, yet here the Government has not proven beyond a reasonable doubt that any of the Defendants intended to collect endangered specimens.  Nevertheless, much like the situation in *Quarrell*, Defendants Bock, Thompson and Torres were engaged in the purposeful collection of valuable wildlife resources for commercial gain.  I believe that Defendants read the *Quarrell* opinion too narrowly.

Having reviewed all of the above case law, I find that under the facts of this case, Congress intended to require the government to prove beyond a reasonable doubt knowledge that the person who took the animal knew it was a snake and, more specifically, a rattlesnake.  For a conviction under 16 U.S.C. §§ 1538(a)(1)(B) and (D), the requisite *mens rea* does not require a

Case 2:03-cr-00744-BB   Document 35   Filed 12/21/03   Page 12 of 14

showing that the defendant who took the animal knew either that the rattlesnake was ridgenosed (of the *willardi* genus) or that it was a member of the New Mexico (*obscuris*) subspecies.

(7)  The incidental taking exception does not apply because Defendant Torres purposely collected the specimen.  Its capture was not by accident.

(8)  Thus, Defendant Torres is guilty as charged in the Information.

(9)  As to the required scienter for conviction for aiding and abetting the taking:

Because there is no evidence that Defendants Bock or Thompson assisted in the capture of the rattlesnake, they can be found guilty only under a theory of "aiding and abetting." "Whoever . . . aids, abets, counsels, commands, induces or procures [the] commission [of a crime] is punishable as a principal."  18 U.S.C. § 2(a).

> "To be guilty of aiding and abetting the commission of a crime, the defendant must willfully associate himself with the criminal venture and seek to make the venture succeed through some action of his own." *United States v. Anderson*, 189 F.3d 1201, 1207 (10th Cir.1999).  *See also United States v. Smith*, 133 F.3d 737, 742 (10th Cir.1997) ("To be liable as an aider and abettor under 18 U.S.C. § 2, the evidence must establish a defendant associated himself with a criminal venture; participated in the venture as something he wished to bring about; sought by his actions to make the venture succeed; and the evidence must establish both the commission of the offense by someone and the aiding and abetting by the defendant."), *cert. denied*, 524 U.S. 920, 118 S. Ct. 2306, 141 L. Ed.2d 165 (1998).  **Thus, <u>the crime of aiding and abetting is a specific intent crime</u> because it requires the defendant to act willfully by participating in the venture and also requires the defendant to have the specific intent to make the venture succeed through his or her acts.**

*United States v. Jackson*, 213 F.3d 1269, 1291-92 (10th Cir.), *vacated on other grounds*, 531 U.S. 1033 (2000).

In Footnote 12, the *Jackson* court further explained its adoption of the majority rule and expressly disagreed with the Eighth Circuit's decision in *United States v. Roan Eagle*, 867 F.2d 436, 445 (8th Cir.), *cert. denied*, 490 U.S. 1028 (1989).  In *Roan Eagle*, the Eighth Circuit found aiding and abetting to not be a specific intent crime.  *Roan Eagle* held that the defendant need only share the intent of the underlying offense, and the government is not required to prove specific intent to assist in the commission of the crime.

(10)  As mentioned before, the government has proven only that Defendants Bock and Thompson knew that Torres had captured a rattlesnake.  Although it may seem unfair, they can be found guilty only if the government proves that they had the specific intent to further the commission of a crime.  Because not all rattlesnakes are protected under the ESA, the government has failed to establish beyond a reasonable doubt that Defendants Bock and Thompson has the requisite specific intent to impose aider and abettor liability.

Wherefore,

IT IS HEREBY ADJUDGED that:

(1) Defendant Bock's Motion to Dismiss *(Doc. 31)* as joined in by all defendants is denied;

(2) Defendants Bock and Thompson are found not guilty;

(3) Defendant Torres is found guilty;

(4) Verdicts in accordance with these findings will be entered; and

(5) Defendant Torres and his attorney shall meet with a Probation Officer to provide information for a Presentence Report and his attorney shall file any objections to the report before the sentencing hearing. At the time of sentencing, both the defendant and his attorney will be given a chance to speak on Mr. Torres' behalf. Sentencing will be held in approximately 75 days.

_____
**UNITED STATES MAGISTRATE JUDGE**